Spear, J.
The question is: Did the trial court err in refusing the request to charge?
It is insisted by plaintiff in error that the time of the trial of the condemnation proceedings there vras no obligation on its part to fence its line of road because the charter of its predecessor, the Marietta & Cincinnati Railroad Company, obtained prior to the enactment of any law requiring railroad companies to fence, imposed no such burden upon it; that the organization of that company was anterior to the passage of the general incorporation act of May 2, 1852, and the company was not affected by the provisions of that act; and inasmuch as the building and maintaining of a fence between the company’s right-of-way and the lands of the adjoining *647 ■owner was, under the constitutional requirement that “compensation therefor shall first be made,” an element of damage proper to be taken into account by the jury in awarding compensation and damages to the land owner, it necessarily follows as a conclusive presumption, that that matter was taken into account by the jury and compensation therefor awarded in the verdict. In other words, the question of the duty of the railroad to fence at the time of the accident is res adjudioata, and having, by satisfying the verdict, paid the ■land owner for making and keeping up a fence, the negligence .which caused the accident was that of the plaintiff, and the •company canuot be held for the consequent damage.
For the purposes of this branch of the inquiry, it may be •assumed, without holding, that the Marietta & Cincinnati Company was not organized under the act of May 2, 1852, entitled “An act to provide for the creation and regulation of incorporated companies in the state of Ohio,” which makes it the duty of every company organized under it to fence its road with a good substantial wooden fence, and therefore, at the time ■of the appropriation, not affected by the provision above referred to. The question then is, does the record of that proceeding furnish a conclusive presumption that the expense of fencing was included in the verdict? The substance of the ■company's petition was that it was necessary on behalf of the ■company, to appropriate the lands described for the use and right-of-way of the company in the construction of its railroad, and that the company had been unable to agree with the owner upon the compensation to be paid for the appropriation by and to its use. The prayer was that the lands “ may be •duly appropriated for the use and purpose aforesaid, and that such proceedings may be had in the premises as may be necessary to perfect the same according to the statute in such case made and provided.” No answer or other pleading was required, and none was filed, and the subject of fencing is nowhere mentioned in the record. The verdict was for a gross sum as damages by reason of the appropriation.
If it may be inferred from the record that the matter of damages by reason of a necessity on the part of the land *648 owner to construct and maintain a fence between his land and that of the company was necessarily determined in the proceeding ; or, if the matter of fence, as an element of damage, was necessarily involved in the proceeding, as shown by the record, then the contention of the plaintiff in error is correct. No duty would devolve upon the company by reason of the statute, to maintain a fence, and the court erred in refusing the instruction asked. But, if the question of fencing might or might not have been involved in the case, then, the' record being silent on that subject, no such presumption would arise. On the contrary, the duty to fence enjoined by the statute of March 23, 1859, (now sec. 3324 Revised Statutes), which provides that every railroad company having the control of a railroad operated in this state, within two yeai’s after the passage of the act or after commencing to run cars, shall construct and maintain fences on both sides of its road, would be imposed upon the company, and the instruction was properly refused. “The question is not what the court might have decided in the former action, but what it did in fact decide as shown by the judgment. A judgment is conclusive by way of estoppel only as to facts, without the proof or admission of which, it could not have been rendered.” Porter v. Wagner, 36 Ohio St. 471.
To sustain the company’s contention reliance must be had on the ,record of the condemnation proceeding alone. That record does not disclose the character of the land sought to be appropriated. We do not overlook the fact that in the answer in this case the company alleges that having located its road through the enclosed lands and fields of the plaintiff, and desiring to appropriate the same, and not being able to agree with the owner, instituted the appropriation proceeding, etc. But this allegation can not help out the record of that proceeding. The learned counsel, in their brief, insist that evidence at the trial “ could not be allowed to contradict, or explain, or do away with, the legal effect of the condemnation proceedings.” Whether, in this broad language the proposition can be maintained or not, we need not stop to discuss. Certain it is that the record itself could not be *649 thus enlarged, and it is the claimed conclusive effect of that record we are here considering. So that, unless it can be satisfactorily shown that the question of fencing was necessarily and always involved in all appropriation inquiries prior to the enactment of the statute requiring railroad companies to fence, it can not be conclusively presumed to have been involved in this one. No attempt has been made to show this, and we think it can not be shown. In the construction of railroads, there are many places where fences are wholly impracticable. The contour of the land may be such as to make fencing impossible, or the existence of permanent buildings just on the line may render a fence wholly unnecessary. This seems too obvious to need elaboration. It follows, as we think, that the record of the condemnation proceedings did not raise a conclusive presumption that the expense of maintaining a fence was, or might have been, taken into account by the jury in making up the verdict, and that the trial court committed no error in refusing the instruction asked.
Another question arises in the case : It was vital to the company’s defense to show that neither the act of May 2, 1852, or the act of March 25, 1859, applied to the Marietta & Cincinnati Railroad Company. Every railroad organized under the former act came within its requirement as to fencing, and presumably all railroad companies are brought within the provisions of the latter act. The burden, therefore, was on the company to show that it was exempt from the duty imposed by those acts. It was admitted at the trial that the defendant is' the successor of the Marietta & Cincinnati Railroad Company, as re-organized, and that the last named company was the successor of the Marietta & Cincinnati Railroad Company, original constructor of the railroad, and that the Cincinnati, Washington & Baltimore Railroad Company, defendant, is the owner of the rights-of-way and franchises of the Marietta & Cincinnati Railroad Company. It is now claimed in argument that the Marietta & Cincinnati Railroad Company was originally incorporated as the Belpre & Cincinnati Railroad Company by special charter, March 8, 1845, and that, by an act passed March 21, 1851, to amend the incorporation act of the Frank *650 lin & Ohio River Railroad Company, and for other purposes, it was provided that upon certain subscriptions therein authorized being made the name of the Belpre & Cincinnati Railroad Company should thereupon be changed to the Marietta & Cincinnati Railroad Company ; that the subscriptions were paid, and the corporate name thereupon became changed at once to the Marietta & Cincinnati Railroad Company, and it always acted and was known by that name. It is not insisted that there is any allegation, proof, or admission of this claim. Reference is made to the several acts, which show the incorporation of the roads as stated. To sustain the statement that the subscriptions were paid, and hence that the corporate name became changed at once to the Marietta & Cincinnati Railroad Company, counsel cite the report of the commissioner of railroads for the year 1870, wherein it is stated that the subscriptions were made in conformity with the statute and the name of the company changed to that of the Marietta & Cincinnati Railroad Company. The court is thus asked to take judicial notice, not only of the acts referred to, but of the statement contained in the report. If this can be done the claim is sustained; if it cannot, the claim fails, and there is nothing before the court to show when, or under what law, the Marietta & Cincinnati Railroad Company was organized. There is apparent conflict of decision in this state as to what laws will be judicially noticed, and there is at least doubt whether the act of March 21, 1851, can be so noticed. The holding in Brown v. The State, 11 Ohio, 277, is authority to the effect that such a law can be noticed, while the decision in Railway Co. v. Moore, 33 Ohio St. 384, is to the contrary. We will not here attempt to reconcile these cases. But it may be said of the earlier act, that, although it is in the form of a special law, and classed among the local laws in the yearly volume, yet it is of a public rather than private nature, inasmuch as it contains grants of sovereignty, interesting as well the community whose rights are thereby contracted, or the corporators whose rights arc thereby enlarged. And assuming, without holding, that both acts referred to may be judicially noticed, there *651 still remains the question whether the contents of the commissioners’ report can be so treated. There are certain executive documents, such ■ as official proclamations, treaties with foreign powers, and other public documents issued by the executive or legislature, which courts will notice judicially but an examination of an extended line of authorities fails to disclose a single holding to the effect that documents similar to that of the commissioners’ report may be classed among those of which judicial notice will be taken. Nor can the claim be sustained upon reason. In general, courts will judicially notice only such facts, or conclusions from facts, as are not the proper objects of evidence. Such are styled non-evidential. Wharton on Evidence, vol. 1, sec. 277. It can not be said that the court, from its presumptive knowledge of •of the law, or of public events, would have within judicial cognizance, the statement of the commissioner of railroads as to an antecedent fact. The question whether or not the statute of March 21, 1851, had been complied with, could have been put in issue in the pleadings. It would then have been a proper subject of evidence, and could have been established or disproved by any witness having knowledge of the fact. This could not be true as to matters which the court may judicially notice.
Whether or not this report would have been competent evidence, under proper pleadings, of the statement referred to, we need not inquire. Under the authority of some adjudicated cases, it would appear to be competent, while others (notably Gordon v. Bucknell, 38 Iowa, 438), wTould seem to hold the contrary. In the Iowa case the court held that the report of the register, of the state land office was not competent to show that certain lands in controversy had been patented to a railroad company. However, it is not with a ■question of evidence we are dealing, but with a question of what courts will notice without evidence.
We are of opinion that the report cannot be resorted to by the court for a knowledge of the statement therein contained, and without it there was nothing before the court to establish that the Marietta & Cincinnati Railroad Company, existing *652 in 1853, was tbe company contemplated in the act of March 21, 1851. And inasmuch as proof that this company was organized prior to the act of May 2, 1852, was necessary to the company’s defence, and is not' shown except by the report, referred to, such defence was necessarily unavailing.

Judgment affirmed.